# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KING ANTHONY ALVAREZ,<br>    *Plaintiff,* | : <br> : <br> : | |
| v. | : <br> : | CIVIL ACTION NO. 23-CV-3570 |
| CITY OF PHILADELPHIA, *et al.*,<br>    *Defendants.* | : <br> : | |

## MEMORANDUM

**PAPPERT, J.**                                                                                                                October 4, 2023

*Pro se* Plaintiff King Anthony Alvarez sues his employer, the City of Philadelphia, the Philadelphia Water Department[1], and "District Union 33"[2], alleging claims for disability discrimination. Alvarez seeks to proceed *in forma pauperis* and requests an emergency hearing as well as appointment of an attorney to handle his case. For the following reasons, the Court will grant Alvarez leave to proceed *in forma pauperis*, deny his request for an emergency hearing and for counsel, and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Alvarez will be given an

---

[1] Although Alvarez names both the Philadelphia Water Department and the City of Philadelphia as Defendants, city agencies like the Philadelphia Water Department, are not suable entities because they do not have a separate legal existence from the City of Philadelphia. *See Vurimindi v. City of Philadelphia*, No. 10-88, 2010 WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (holding that under 53 Pa. Cons. Stat. § 16257, "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia"). Accordingly, for purposes of this action, Alvarez's claims are properly brought against the City of Philadelphia. The Philadelphia Water Department will therefore be dismissed as a Defendant.

[2] The Court understands Alvarez to refer to the American Federation of State County and Municipal Employees, Philadelphia District Council 33, the labor union that represents certain City employees.

opportunity to cure the deficiencies identified by the Court by filing an amended complaint.

I

Alvarez began working for the Philadelphia Water Department, an agency of the City of Philadelphia, on July 31, 2023.[3]  (Compl. at 4, ECF No. 2.)  He alleges that within days of starting, he began to experience "multiple incidents" of "mistreatment" that were "polar opposite" to the treatment received by another trainee.  (*Id.*)  For example, a trainer "g[ot] in [his] face" and cursed at him.  (*Id.*)  Another trainer made "many bigoted and inappropriate" comments, such as "Black men who have gotten raped need to take care of their mental health and go to therapy."  (*Id.*)  After Alvarez "reported" the second trainer to HR, she "began mistreating" him.  (*Id.*)  In addition, Alvarez's supervisor told him to close his eyes and cover his ears so that she could "playfully beat [another] employee hard," which caused Alvarez to suffer "flashbacks."  (*Id.*)  The same supervisor allegedly "choked" and "shook" another employee "by the neck."  (*Id.*)  An assistant manager also allegedly yelled at Alvarez, "got in [his] face," and "tried to fire [him]," after Alvarez requested that she reschedule a meeting so that his union and an HR representative could be present.  (*Id.*)

Alvarez also claims his psychiatrist submitted "ADA accommodation form[s]" that Alvarez alleges were "reasonable" and would not have caused "undue hardship," but that HR denied the accommodations.  (*Id.*)  He states that his union representative told him "not to report the violence from [his] supervisor."  (*Id.*)  Alvarez contends on

---

[3] The factual allegations are from Alvarez's Complaint (ECF No. 4).  The Court adopts the pagination supplied by the CM/ECF docketing system.

two occasions he had to leave in the middle of his shift with an "anxiety/fear attack" where he was "unable to breath." (*Id.* at 5.) He alleges that he has been "triggered by the violence and [is] freaking out internally." (*Id.*) Based on these allegations, Alvarez asserts the following employment-related claims: "Title I ADA Accommodation, retaliation for filing an HR Complaint, unfair representation, hostile work environment, [and] disability discrimination." (*Id.* at 3.) He requests money damages and for the "approval of his accommodations" for his "mental health." (*Id.* at 5.)

II

The Court grants Alvarez leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Alvarez is proceeding *pro se*, the Court construes his allegations

liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

III

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 623; 42 U.S.C. § 12112). Although Alvarez does not cite to a specific federal statute, the Court understands him to assert claims under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Labor Management Relations Act ("LMRA").[4] Based on the minimal facts alleged, Alvarez fails to state plausible claims against either the City of Philadelphia or his union 33.[5]

---

[4] Alvarez only asserts claims under federal employment statutes and does not attempt to assert state law claims under the Pennsylvania Human Relations Act ("PHRA"). (*See* Compl. at 5 (asking that the Court "decide and apply the federal laws that protect the plaintiff's disability").)

[5] Plaintiffs pursuing employment discrimination claims in federal court must first exhaust administrative remedies with the Equal Opportunity Employment Commission ("EEOC") before filing a lawsuit. *See generally Slingland v. Donahoe*, 542 F. App'x 189, 191 (3d Cir. 2013); *Churchill v. Star Enterprises*, 183 F.3d 184, 190 (3d Cir. 1999); 42 U.S.C. § 2000e-5 (setting forth Title VII procedures for exhausting remedies with EEOC); 42 U.S.C. § 12117(a) (adopting Title VII enforcement scheme and remedies for ADA). This requires a plaintiff to first file a charge with the EEOC alleging that his or her employer has engaged in an unlawful employment practice. *Itiowe v. NBC Universal Inc.*, 556 F. App'x 126, 128 (3d Cir. 2014) (citing *Occidental Life Ins. Co. of California v. E.E.O.C.*, 432 U.S. 355, 359 (1977)). After investigating, the EEOC will issue a "right-to-sue" letter if it determines that reasonable cause does not exist to pursue the matter. *See id.* The plaintiff may present this right-to-sue letter to the federal court to demonstrate administrative exhaustion. *Id.*; *see also Burgh v. Borough Council of the Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). Administrative exhaustion is required even when discrimination claims are brought against unions. *See Deans v. Kennedy House, Inc.*, 998 F. Supp. 2d 393, 414 (E.D. Pa.), *aff'd*, 587 F. App'x 731 (3d Cir. 2014). Alvarez has not alleged that he filed a charge with the EEOC and received a right-to-sue letter with respect to claims against either Defendant. Nor did he attach a copy of any letter to his Complaint.

A

Alvarez asserts a disability discrimination claim based on allegations that the City of Philadelphia denied his requests for reasonable accommodations to address his "mental health." To state a plausible discrimination claim under the ADA a plaintiff must allege: (1) that he is disabled within the meaning of the ADA; (2) that he is otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (3) he suffered an adverse employment decision as a result of the discrimination. *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citation omitted). Discrimination under the ADA "encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).[6] Under the ADA, a plaintiff is disabled if he (1) has a "physical or mental impairment that substantially limits one or more" of his "major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." *Eshleman*, 961 F.3d at 245 (citing 42 U.S.C. § 12102(1)). An adverse employment action is one "that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Komis v. Sec'y of U.S. Dep't of Lab.*, 918 F.3d 289, 292 (3d Cir. 2019). Such an action can include an employer's refusal to make reasonable accommodations for a plaintiff's disabilities. *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010).

---

[6] The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

Alvarez has not plausibly pled a discrimination claim under the ADA. First, he has not alleged that he suffers from a disability. Alvarez states only that he requested accommodations for his "mental health" but provides no details about the alleged mental impairment, including how it substantially limits any major life activity, whether he has a record of a mental health impairment, or whether the City of Philadelphia regards him as disabled. Second, Alvarez provides no facts about his job with the City, including whether he is qualified to perform the functions of that job with or without a reasonable accommodation. Finally, Alvarez has not adequately pled that he suffered an adverse employment action. He states only in conclusory terms that the City refused reasonable accommodations for his mental health. He alleges no facts about what, if any, accommodations he requested, how and when he requested them, and how the City responded to his requests or was otherwise involved in accommodating him.[7] *See, e.g.*, *Brister v. Emp. Opportunity & Training Ctr. of Ne. Pennsylvania Inc.*, No. 22-2047, 2023 WL 4424255, at *2 (M.D. Pa. July 10, 2023) (dismissing ADA claim for failure to accommodate where plaintiff alleged only in conclusory fashion that her employer failed to provide reasonable accommodations for her disability).

Alvarez also asserts a hostile work environment claim against the City, presumably based on allegations of "mistreatment" by trainers and his assistant manager. It is not clear whether Alvarez brings this claim under the ADA, Title VII, or both. To state a hostile work environment claim under Title VII, a plaintiff must allege

---

[7] Aside from contending that the City refused to provide him reasonable accommodations, Alvarez has not alleged any facts to plausibly support an inference that he suffered any other adverse employment action as a result of alleged disability discrimination.

6

that:  (1) he suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present.  *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (alterations, internal quotations, and citations omitted); *Felder v. Penn Mfg. Indus., Inc.*, 303 F.R.D. 241, 243 (E.D. Pa. 2014).  Protected classes under Title VII include those based on race, color, religion, sex, and national origin.  *See* 42 U.S.C. § 2000e–2(a); *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015).  To state a hostile work environment claim under the ADA, a plaintiff must allege that:  (1) he is a qualified individual with a disability under the ADA; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability or request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take prompt, effective remedial action.  *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999).

      In examining alleged "severe or pervasive" discrimination in a workplace under either statute, the court must "'look at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 132 (E.D. Pa. 2020) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71

7

(2001)).  "[O]rdinary tribulations of the workplace, such as the sporadic use of abusive language, [ ] jokes, and occasional teasing" are not enough to sustain a hostile work environment claim.  *Ballard-Carter v. Vanguard Grp.*, 703 F. App'x 149, 152 (3d Cir. 2017).

Alvarez alleges that he was subjected to "mistreatment" by individuals training him, such as one trainer getting in his face and cursing at him and another trainer making "bigoted and inappropriate remarks."  (Compl. at 4.)  He also alleges that a supervisor "playfully beat" another employee, which caused Alvarez to have flashbacks.  (*Id.*)  Alvarez has not stated that the alleged mistreatment was the result of intentional discrimination, either because of his membership in a protected class or because he is disabled.  Accordingly, the allegations, as pled, do not state a plausible hostile environment claim under either statute.

Alvarez also asserts a retaliation claim against the City of Philadelphia.  Federal law prohibits an employer from retaliating against an employee for opposing any act made unlawful by the employment discrimination statutes.  *See* 42 U.S.C. § 2000e-3; 42 U.S.C. § 12203(a), *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).  It is again not clear whether Alvarez asserts a retaliation claim under the ADA or under Title VII.  Because the anti-retaliation provisions in the statutes are similar, courts use the same framework for analyzing ADA and Title VII retaliation claims.  *See Krouse*, 126 F.3d at 500.  To state a retaliation claim under the ADA or Title VII, the plaintiff must allege facts to show:  (1) he engaged in a protected employment activity under either statute; (2) the employer took an adverse employment action against him; and (3) a causal link

between the protected activity and the adverse employment action. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016); *Belles v. Wilkes-Barre Area Sch. Dist.*, 843 F. App'x 437, 439 (3d Cir. 2021).

Alvarez alleges that after he complained to HR about a trainer who made "many bigoted and inappropriate" comments, such as "Black men who have gotten raped need to take care of their mental health and go to therapy," the trainer began mistreating Alvarez. (Compl. at 4.) While protected activity need not be formal, it must express opposition to alleged discriminatory employment practices under the federal employment statutes. *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001). A general complaint about unfair treatment does not constitute protected activity. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995). Alvarez provides no details about the complaint he made to HR about the trainer and the Court is unable to assess whether it constituted protected employment activity. Assuming *arguendo* that Alvarez's complaint to HR was protected conduct under Title VII or the ADA, his retaliation claim nevertheless fails because he does not allege facts supporting a plausible inference that he suffered an adverse employment action as a result of his complaint. As noted above, an adverse employment action is alleged when the action is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004). Alvarez alleges that the trainer mistreated him after he complained to HR about her. However, "general unpleasantness that can occur in the workplace," even if motivated by discriminatory animus, does not rise to the level of an adverse

9

employment action. *See Barnees v. Nationwide Mut. Ins. Co.*, 598 F. App'x 86, 90 (3d Cir. 2015).

B

Alvarez names his union as a defendant and claims his union representative advised him not to report his supervisor's alleged violence. Alvarez's claim against the union is not clear. He states in his Complaint that he brings a claim for "unfair representation." (Compl. at 3.) To the extent that Alvarez intends to state such a claim against the union under Section 301 of the LMRA, he has failed to do so.[8] States and their "political subdivisions" like the City of Philadelphia are not "employers" under the LMRA. *See* 29 U.S.C. § 152(2) ("The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation . . . or any State or political subdivision thereof . . . ."); *see also Manfredi v. Hazleton City Auth. Water Dep't*, 793 F.2d 101, 104 (3d Cir. 1986) (finding that the defendant water authority was a "political subdivision" and therefore, not an "employer" under the LMRA). Because the City is not an employer under the LMRA, individuals working for political subdivisions cannot be considered "employees" entitled to bring suits under Section 301 of the LMRA. *See Mills v. AFSCME Dist. Council 33*, No. 20-1272, 2020 WL 3791568, at *5 (E.D. Pa. July

---

[8] Section 301 of the LMRA grants federal district courts jurisdiction over "[s]uits for violation of contracts . . . between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). A Section 301 claim may be characterized as either a "pure claim" or a "hybrid claim." Pure claims are brought by a union against an employer. *Service Employee International Union Local 36 v. City Cleaning Company*, 982 F.2d 89, 94 n.2 (3d Cir. 1992). Hybrid claims are brought by an employee against his employer for breaching the collective bargaining agreement ("CBA") and against his union for breaching the duty of fair representation by not pursuing a grievance against the employer. *Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 526 (D.N.J. 2017).

7, 2020) (dismissing unfair representation claim because the City of Philadelphia "is not subject to Section 301 under the [LMRA]"); *Castellani v. Bucks Cnty. Municipality*, No. 07-1198, 2008 WL 618653, at \*3 (E.D. Pa. Feb. 29, 2008) (dismissing LMRA claim because Bucks County is a political subdivision of State of Pennsylvania and therefore plaintiff is not an employee able to bring suit under LMRA).

To the extent Alvarez attempts to assert discrimination claims against his union under Title VII or the ADA, these claims must also be dismissed. Unions can be subject to liability under Title VII for discrimination against its members. *See Martinez v. Int'l Bhd. of Elec. Workers-IBEW Local Union No. 98*, 352 F. App'x 737, 740 (3d Cir. 2009); 42 U.S.C. § 2000e-2(c) (stating that it is an "unlawful employment practice" for a labor organization "to cause or attempt to cause an employer to discriminate against an individual in violation of this section"). Unions can also be subject to liability for discrimination under the ADA. *See* 42 U.S.C. § 12111(2) (defining "covered entity" to include labor organizations); *Patterson v. AFSCME # 2456*, 320 F. App'x 143, 146-47 (3d Cir. 2009) (affirming summary judgment in favor of union where evidence showed that the union's decision not to pursue plaintiff's grievances was not due to discrimination based on plaintiff's disability). District Council 33 can only be liable if it "instigated or actively supported the discriminatory acts," *see Anjelino v. New York Times Co.*, 200 F.3d 73, 95 (3d Cir. 1999), or "took an active role in the discrimination," *see Martinez*, 352 F. App'x at 740. Alvarez's allegations do not support a plausible inference that his union was actively involved in any alleged discrimination. He contends only that he requested his union and an HR representative be present for a meeting with an assistant manager and that his union representative advised him to

not "report the violence from [his] supervisor." (Compl. at 4.) Alvarez does not allege that he complained to the union about any alleged discrimination or that the union otherwise took an active role in discriminating against him.

## IV

For the foregoing reasons, the Court will grant Alvarez leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). In addition, Alvarez's Emergency Motion for a hearing will be denied and his Motion for the Appointment of Counsel will be denied without prejudice as is premature at this point. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis). The Court will permit Alvarez an opportunity to file an amended complaint in the event he can address the defects the Court has noted.

An appropriate Order follows.

                                         **BY THE COURT:**

                                         ***/s/ Gerald J. Pappert***
                                         **GERALD J. PAPPERT, J.**